**Harold HOBBS, Appellant,**

v.

**A.L. LOCKHART, Appellee.**

**No. 85–1730–EA.**

United States Court of Appeals, Eighth Circuit.

Submitted March 11, 1986.

Decided May 22, 1986.

---

Edward G. Adcock, Little Rock, Ark., for appellant.

Clint Miller, Asst. Atty. Gen., Little Rock, Ark., for appellee.

Before GIBSON and WOLLMAN, Circuit Judges, and HARPER,* Senior District Judge.

* The HONORABLE ROY W. HARPER, Senior U.S. District Judge for the Eastern District of Missouri, sitting by designation.

HARPER, Senior District Judge.

Harold Hobbs, an Arkansas prisoner, seeks to challenge his conviction for capital felony murder pursuant to 28 U.S.C. § 2254. After a change of venue to Lawrence County, Arkansas, Hobbs was convicted by a jury of capital murder and sentenced to death. On appeal, the Arkansas Supreme Court reversed and remanded for a new trial. *Hobbs v. State*, 273 Ark. 125, 617 S.W.2d 347 (1981). On retrial, the Circuit Court denied Hobbs' second motion for a change of venue, and Hobbs was thereafter convicted by a jury of capital felony murder and sentenced to life imprisonment without parole. The Arkansas Supreme Court affirmed his conviction. *Hobbs v. State*, 277 Ark. 271, 641 S.W.2d 9 (1982).

Hobbs filed a motion for post-conviction relief pursuant to Rule 37 of the Arkansas Rules of Criminal Procedure. The Arkansas Supreme Court denied this motion in an unpublished opinion on July 18, 1983, and Hobbs thereafter filed the present petition for a writ of habeas corpus. The district court[1] denied the writ, finding no constitutional error in the trial court proceeding that warranted reversal.

In support of his petition, Hobbs argues that he was denied, (1) due process of law because the trial court admitted prejudicial evidence, (2) his Sixth Amendment right to a fair and impartial jury because the trial court denied his motion for a change of venue, (3) his Sixth Amendment right to a fair and impartial jury because the veniremen discussed the case among themselves, (4) his Sixth Amendment right to a jury panel consisting of a representative cross-section of the community because some veniremen avoided serving as jurors by employing improper means, (5) his Sixth Amendment right to a fair and impartial trial because the state prosecutor employed improper hypothetical questions during voir dire, and (6) due process of law because the state prosecutor elicited testimony concerning the fact that Hobbs invoked his Fifth Amendment right to remain silent and his Sixth Amendment right to counsel upon arrest. For the reasons discussed below, we affirm the judgment of the district court.

Hobbs was convicted of killing Mrs. Marsha Bonds, a bookkeeper for a company where Hobbs once worked in Newport, Arkansas. The State's theory was that on October 26, 1979, Hobbs forced Mrs. Bonds to make out two company checks payable to Hobbs, totalling $1,500.00. Hobbs then drove Mrs. Bonds, in her car, to an empty field and fatally shot her two times in the head.

■ Hobbs first claims that the trial court improperly allowed into evidence testimony concerning other crimes and "bad acts" for which Hobbs was not charged. Specifically, Hobbs challenges the admission of testimony concerning his attempted escape from the White County Jail several months after the crime, his purchase of whiskey a few hours after the crime, his purchase of marijuana in Little Rock, Arkansas the day after the crime, his procuring the services of a prostitute the day after the crime, and his living with Mrs. Kathy Davis, a white woman. Hobbs asserts that this evidence was so egregious, so remote in time and circumstance, and so prejudicial, that its admission denied him due process of law.

"[Q]uestions concerning the admissibility of evidence are matters of state law and are not reviewable in a federal habeas corpus proceeding unless the asserted error infringed a specific constitutional protection or was so prejudicial as to deny due process." *Wallace v. Lockhart*, 701 F.2d 719, 724 (8th Cir.), *cert. denied*, 464 U.S. 934, 104 S.Ct. 340, 78 L.Ed.2d 308 (1983). We thus need not concern ourselves with whether the trial court erred in admitting the particular testimony. Rather, we must decide whether the admissions resulted in a trial so fundamentally unfair as to deny

---

1. The Honorable Henry Woods, United States District Judge for the Eastern District of Arkansas.

Hobbs due process of law. *Batten v. Scurr,* 649 F.2d 564, 569 (8th Cir.1981). "In making this determination we must review the totality of the facts in the case and analyze the fairness of the particular trial under consideration." *Manning-El v. Wyrick,* 738 F.2d 321, 323 (8th Cir.) (citations omitted), *cert. denied,* — U.S. —, 105 S.Ct. 298, 83 L.Ed.2d 233 (1984).

■ Hobbs argues that the fundamental fairness of the entire trial was tainted by the cumulative effect of admitting other evidence of crimes. Hobbs argues that the prejudicial nature of this evidence was enhanced by the manner in which the prosecutor elicited the testimony and by the prosecutors reference to the testimony during closing arguments. After reviewing the totality of the evidence and the manner in which the evidence of other crimes was presented and referred to, we can only conclude that the admission of the challenged testimony was not "so conspicuously prejudicial or of such magnitude that it fatally infected the trial and deprived [Hobbs] of fundamental fairness." *Manning-El v. Wyrick, supra,* 105 S.Ct. at 323. The evidence of Hobbs' guilt was so overwhelming that the error, if any, in admitting the challenged testimony must be characterized properly as harmless. *See, United States v. Hasting, et al.,* 461 U.S. 499, 508–09, 103 S.Ct. 1974, 1980, 76 L.Ed.2d 96 (1981).

■ Additionally, Hobbs has failed to offer any explanation for not properly objecting at trial to Kathy Davis' testimony that she lived with Hobbs. The Arkansas Supreme Court refused to consider whether admitting Mrs. Davis' arguably prejudicial testimony denied Hobbs due process of law because of Hobbs' procedural omission at trial. "[W]hen a procedural default bars state litigation of a constitutional claim, a state prisoner may not obtain federal habeas relief absent a showing of cause and actual prejudice." *Engle v. Isaac,* 456 U.S. 107, 129, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783 (1982). Hobbs has not shown cause and, therefore, is barred from obtaining federal habeas relief on this ground.

■ Hobbs next argues that he was denied his Sixth Amendment right to a trial by an impartial jury because the trial court refused to grant his second motion for a change of venue. In support, Hobbs contends that the nature, extent and timing of the publicity surrounding his trial was so pervasive that the community was prejudiced against him. Hobbs argues that such prejudice made it impossible to select an impartial jury. The State of Arkansas claims that Hobbs is procedurally barred from raising this issue which he failed to raise on direct appeal.

Hobbs first raised this issue before the Arkansas Supreme Court in his petition for post-conviction relief. That court held that "[q]uestions which could have been raised on direct appeal but were not must be considered waived." *Hobbs v. State,* No. CR–82–48, Not Designated for Publication (July 18, 1983) (per curiam). Procedural default at the state level bars federal habeas relief absent a showing of cause and actual prejudice. *Engle v. Isaac, supra,* 456 U.S. at 129, 102 S.Ct. at 1572. Hobbs has not offered any explanation for failing to raise this issue on direct appeal and, therefore, we will not review the issue on appeal to this court.

■ Moreover, we agree with the district court that Hobbs would not be entitled to relief even if we were to reach the merits of his claim. In *Patton v. Yount,* 467 U.S. 1025, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984), a case strikingly similar to the present case, the Supreme Court stated that "[t]he relevant question is not whether the community remembered the case, but whether the jurors at Yount's trial had such fixed opinions that they could not judge impartially the guilt of defendant." *Id.* at 1035, 104 S.Ct. at 2891. After carefully reviewing the chart prepared by Hobbs' counsel which summarizes the scope and content of voir dire in this case (Addendum D to Hobbs' Trial Brief), we conclude that the pretrial publicity did not render the jurors incapable of impartially judging Hobbs' guilt. None of the jurors had formed an

opinion as to guilt previously, nor did any of the jurors admit to being prejudiced by the publicity. It is true that the majority of the jurors were exposed to publicity and/or knew of Hobbs' first trial, but this alone does not render the jurors impartial. The pretrial publicity in the present case was neither a "barrage," nor necessarily "inflammatory," nor did it amount to a "huge wave of public passion." *Id.* at 1033–4, 104 S.Ct. at 2889. In *Yount*, it was the absence of these factors which led the Court to reverse the Third Circuit's decision to grant a new trial. In the present case, we would likewise decline to overturn the trial court's finding that the jury, as a whole, was impartial.

■ Hobbs next argues that he was denied his Sixth Amendment right to trial by a jury consisting of a representative cross-section of the community. Hobbs contends that some veniremen avoided jury duty by using information gained through conversations with other veniremen. Hobbs contends that the representative nature of the jury was destroyed when some veniremen used contrived excuses in order to avoid service.

Hobbs did not raise this issue on direct appeal, and absent a showing of cause and actual prejudice, he is barred from raising it presently. *Engle v. Isaac, supra*, 456 U.S. at 129, 102 S.Ct. at 1572. Hobbs has not attempted to explain his procedural default and, therefore, cannot obtain habeas relief on this ground.

■ Hobbs' argument is additionally without merit. The cases establish that the representative cross-section requirement prohibits states from systematically excluding distinctive groups in the community. *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975); *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979). Hobbs does not contend, nor is it plainly evident, that the jurors who allegedly used contrived excuses in order to avoid jury service comprised a "distinctive" group in the community. *Duren v. Missouri, supra* at 364, 99 S.Ct. at 668. Thus, Hobbs' claim would fail.

Additionally, Hobbs has not referred this Court to any cases wherein a jury panel was struck down as not being representative of the community based upon the veniremen's misconduct.

Hobbs next argues that he was deprived of his Sixth Amendment right to trial by an impartial jury because the trial court allowed the state prosecutor to ask hypothetical questions during voir dire regarding circumstantial evidence. Hobbs contends that the hypotheticals were framed in such a way that the jurors committed themselves to convict Hobbs if the evidence were to develop in a certain manner. The district court rejected this argument, stating that Hobbs failed to raise a constitutional question.

■ Initially, we note that although there are no constitutional provisions directly addressing the use of hypothetical questions during voir dire, there may be circumstances where a party's manner of conducting voir dire renders a jury impartial and thereby triggers a Sixth Amendment violation. In the present case, however, we cannot say that Hobbs was prejudiced in any way by the particular hypotheticals posed to the jurors.

In disposing of Hobbs' petition for post-conviction relief, the Arkansas Supreme Court held:

> "that prospective jurors may not be questioned with respect to a hypothetical set of facts to be proved at trial and thus commit the jury to a decision in advance, but that they may be questioned, as here, about their mental attitude toward certain types of evidence such as circumstantial evidence." *Hobbs v. State*, 641 S.W.2d at 12.

That court then went on to find that the particular questions did not include a set of facts to be proved at trial. We agree. The hypothetical questions were intended clearly to ascertain whether the jurors *could* convict Hobbs based upon circumstantial evidence, and contrary to Hobbs' contention, the jurors never committed themselves to do so absolutely. Additionally,

the hypotheticals did not contain a set of facts to be proved at trial. The prosecutor referred to fingerprints and handwriting, but the transcript reveals that these examples were used merely to clarify the meaning of "circumstantial evidence." The generic examples of circumstantial evidence were also not linked to the particular evidence to be presented. In sum, we do not find that the hypothetical questions asked during voir dire rendered the jury impartial, and thus we uphold the district court's determination that Hobbs is not entitled to relief on this issue.

■ Hobbs' final ground for relief is that his Fifth Amendment right against self-incrimination and Sixth Amendment right to effective assistance of counsel were eroded when the State's witness, Deputy Sheriff H.A. Gayle, testified as to Hobbs' invocation of these rights. Both the Arkansas Supreme Court and the district court below recognized that Sheriff Gayle's testimony amounted to a violation of the due process clause of the Fourteenth Amendment. Both courts, however, found the comment to be "harmless error" as defined in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and as applied in *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976).

There is no doubt that eliciting testimony that the defendant invoked his constitutional rights is a violation of due process. *Doyle v. Ohio, supra.* The court in *Doyle* recognized, however, that application of the harmless error doctrine will be appropriate in some cases.

The scope of the harmless error doctrine was announced in *Chapman v. California, supra,* where the court stated: "We conclude that there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction." 386 U.S. at 22, 87 S.Ct. at 827. In determining whether the alleged error is harmless, "[t]he question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Chapman v. California, supra,* at 23, 87 S.Ct. at 827, citing *Fahy v. Connecticut*, 375 U.S. 85, at 86–87, 84 S.Ct. 229, at 230, 11 L.Ed.2d 171 (1963).

The Arkansas Supreme Court found that "there was no repetitive questioning to focus on [Hobbs'] silence, and there was no attempt to highlight the silence by argument," and furthermore the evidence of guilt was overwhelming. *Hobbs v. State, supra* at 15. Hobbs does not dispute any of these findings. After reading Sheriff Gayle's testimony and the prosecutor's closing arguments, and in light of the overwhelming evidence of guilt, we hold that there was no reasonable possibility that the improper testimony influenced the jury on Hobbs' guilt.

■ We also reject Hobbs' claim that we should grant a writ of habeas corpus based upon the totality of error committed at his trial. As the foregoing discussion indicates, we found only one cognizable error and we held that it was harmless.

Accordingly, we affirm the judgment of the district court.